416 So.2d 553 (1982)
STATE of Louisiana
v.
Walter Hiram ALLEN, Jr.
No. 81-KA-2752.
Supreme Court of Louisiana.
June 21, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Duncan S. Kemp, Dist. Atty., J. Mark Rolling, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
John I. Feduccia, Baton Rouge, for defendant-appellant.
H. CHARLES GAUDIN, Justice Pro Tem.[*]
Walter Hiram Allen Jr. was indicted by a Tangipahoa Parish grand jury for second *554 degree murder[1] and subsequently tried before a 12-person jury and unanimously convicted of manslaughter,[2] a lesser responsive verdict. He had entered pleas of not guilty and not guilty by reason of insanity.
After being sentenced to 12 years at hard labor, he appealed both his conviction and sentence to this Court on the basis of five assignments of error.

FACTS
On September 13, 1980, defendant shot and killed Elmore McCarroll on a street in Independence, Louisiana.
Four and a half years earlier, on March 13, 1976, McCarroll had shot Allen in the head with a shotgun and left him for dead. Allen survived, and McCarroll was sentenced to five years at hard labor for the incident.
The defendant said that when he saw McCarroll on September 13th "... it scared me ... I could tell by the way he was walking and the way he swaggered ... I can tell he was drinking ..."
Allen stated that McCarroll then "... jumped behind a car and he whirled around there ... and he used foul language at me..."
From the transcript:
Q. What foul language?
A. Well, I wouldn't want to say what it was in court.
Q. I think you better go ahead and say it.
A. Well, he called me a hard name.
Q. I think you better go ahead and tell us what he said.
A. Uh, well, he said, "Hey, Mother Fucker", that is what he said.
Q. Uh-huh. And what happened then?
A. He wheeledhe was wheelinghe had done wheeled around towards me and when he did that, I figured he was going to shoot me and I just threw my shotgun out and shot him.

ASSIGNMENT OF ERROR NO. 1
In his first assignment, defendant contends that the trial judge erroneously restricted voir dire examination.
Defense counsel asked a prospective juror this:
"Do you have any fears? Phobias? If you had been shot, could you understand the fear of being shot again?"
The prosecutor voiced an objection and it was sustained.
In State v. Murray, 375 So.2d 80 (La. 1979), cited favorably in State v. Robinson, 404 So.2d 907 (La.1981), this Court stated:
"Voir dire examination is designed to test the competency and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial."
Also,
"It is well established that the scope of the voir dire examination is within the sound discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a clear abuse of discretion."
Here, we find no abuse of discretion.

ASSIGNMENT OF ERROR NO. 2
Defendant tried to introduce a photograph of himself prior to the time he was shot by McCarroll in 1976. The trial judge refused to admit it, saying it would not "... serve a specific purpose."
Apparently, Allen's counsel sought to use the photograph to help establish the insanity defense.
The State argued that the five-year-old photograph would only serve to arouse sympathy with the jurors.
While the photograph may help show the emotional trauma that defendant sustained, its probative value was questionable, particularly in view of the fact that defendant did not seriously try to show insanity at the time of McCarroll's shooting. No medical witnesses were called.
*555 The trial judge did not abuse his discretion, and this assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
By these assignments defendant argues that the trial judge erred in restricting his inquiry into McCarroll's allegedly dangerous character.
Allen had two defenses, insanity and self-defense.
Defense counsel first tried to inquire into McCarroll's character when questioning Curtis Haynes, a state probation and parole officer. The trial court said that there had been no showing of a hostile demonstration or overt act and he sustained the prosecutor's objection.
LSA-R.S. 15:482 reads:
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
Defense counsel, trying to convince the trial judge that the requirements of LSA-R.S. 15:482 had been satisfied, interrupted Curtis' testimony and called the defendant to the stand and eventually asked him if he had "... ever received any threats or harassment ..." from McCarroll.
The State objected, again saying that there had been "... absolutely no showing of an overt act or hostile demonstration..."
The trial judge, outside of the jury's presence, carefully considered the objection and overruled it, telling defense counsel he could proceed.
Defendant then told the jury at length how and why he felt threatened by McCarroll, testimony that tended to establish McCarroll's bad and/or dangerous character. Allen told about threats made by McCarroll and how McCarroll had stalked him.
Later in the trial, the judge permitted the defense to call a deputy sheriff who testified from records showing that McCarroll had had two charges of aggravated assault filed against him, one with a .20 gauge pump shotgun. There were no convictions, only charges.
Still later, the trial judge allowed defendant's mother to testify about threatening telephone calls made by McCarroll, and he (the judge) permitted another witness, Esco Sharp, to testify about an altercation he had been in with McCarroll, during which Sharp shot McCarroll.
After first ruling that the defense could not inquire into McCarroll's character without first meeting the LSA-R.S. 15:482 test, the trial judge permitted Allen and subsequent witnesses to testify freely about McCarroll's behavior and character traits.
However, the defense, as aforesaid, did not produce any physicians to give expert testimony concerning the possibility that defendant, due to a mental or emotional condition caused by McCarroll's threats or hostility, was unable to distinguish between right and wrong at the time he shot McCarroll.
This failure likely caused or at least contributed substantially to the breakdown of the insanity defense.
Regardless, the assignments of error based on trial judge's restricting the inquiry into McCarroll's character are without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial court failed to comply with the requirements of LSA-C. Cr.P. Art. 894.1 in imposing sentence, and he also argues that the sentence imposed is excessive.
Allen was sentenced to serve 12 years at hard labor. The maximum sentence which could be imposed for a violation of La.R.S. 14:31 is imprisonment at hard labor for 21 years.
During sentencing, the trial judge stated that he had carefully reviewed the presentence investigation report and the numerous petitions from citizens requesting the defendant be given a suspended sentence. He noted that the jury did not accept the *556 defense of insanity and it obviously took into consideration the circumstances surrounding the commission of the offense in making its decision to return the responsive verdict of manslaughter.
The trial judge noted that the defendant's parents are widely known and the defendant helps care for his father who is ill. He then added that a grievous wound had been inflicted upon defendant several years ago by McCarroll.
The trial judge also stated that defendant had decided to take the law into his own hands and that a suspended sentence would deprecate the seriousness of the crime. He stated that others may construe a suspended sentence in this case as an open invitation to take the law into their own hands to revenge crimes committed upon them or their loved ones. He then sentenced defendant to serve 12 years at hard labor.
Regarding the length of the sentence, we cannot say that the trial judge abused his discretion. We note that the jury rejected not only the insanity defense but also the self-defense contention, meaning that the jurors were not convinced that McCarroll was about to inflict bodily harm on Allen or that McCarroll had given the impression that he was, at that point in time, a threat to defendant's person.

CONCLUSION
The record indicates that Walter Hiram Allen received a fair trial and we affirm his conviction and sentence.
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit, and Judges Israel M. Augustine, Jr. and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] LSA-R.S. 14:30.1.
[2] LSA-R.S. 14:31.