432 So.2d 1064 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Homer Ray CALLOWAY, Defendant-Appellant.
No. CR82-632.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
*1065 David L. Wallace, Evans, Bradley, Wallace & O'Neal, DeRidder, for defendant-appellant.
William C. Pegues, III, Dist. Atty., De-Ridder, for plaintiff-appellee.
Before DOUCET, YELVERTON, and KNOLL, JJ.
KNOLL, Judge.
This appeal was taken by the defendant, Homer Ray Calloway, for consideration of one assignment of error, whether he received an excessive sentence in violation of La. Const. Art. 1, § 20.
The defendant was initially charged by bill of information for attempted second degree murder. Pursuant to a plea bargain, the State amended the original bill to the reduced charge of aggravated battery, to which charge the defendant entered a plea of guilty on May 14, 1982. The trial court sentenced the defendant to serve seven years at hard labor with the Louisiana Department of Corrections.

OFFENSE
On January 12, 1982, the defendant was the manager of the DeRidder Motel in DeRidder, Louisiana located across the street from the parish courthouse. The day before the shooting, the defendant bought a double-barrel derringer pistol from Durham's Pawn Shop. Late in the morning of January 12, 1982, Ms. Andrus ran across the street to the Sheriff's office to report that there had been a shooting at the motel. The deputies found the victim, Charles E. Oliver, lying on the floor in one of the rooms with a wound in his right upper abdomen. The victim told the investigating officers that the defendant had shot him with a double-barrel pistol. The officers found the defendant in his office with the pistol on his desk. The victim was hospitalized and underwent surgery on two occasions.
The defendant informed the officers that he and Oliver, (the victim) had an argument over the rent and the defendant pulled the gun out and shot Oliver.

PLEA AND SENTENCE
Before the trial court accepted the plea, the trial court thoroughly reviewed with the defendant the reduced charge of aggravated battery, his constitutional rights, the consequences he would face by entering a guilty plea to the charge, and established that he was acting freely and voluntarily in pleading guilty to the charge. The record clearly depicts that the plea bargain was for the aggravated battery which was reduced from attempted second degree murder which carries a mandatory fifty years. The defendant knew he could receive a maximum sentence for aggravated battery of ten years at hard labor:
"Q. Now, this plea agreement, it is proposed that you plead guilty to a lesser offense of Aggravated Battery, and Aggravated Battery is still a felony charge, and it provides that a person convicted of Aggravated Battery shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years or both. So, that if you are convicted of Aggravated Battery on this plea of *1066 guilty, it means the Court could sentence you to pay a fine of up to five thousand and/or imprison you either in the state penitentiary at hard labor or in the parish jail for up to ten years. Do you understand that, Mr. Calloway?
A. Yes, sir."
* * * * * *
"Q. And you believe that under all the circumstances that you prefer to enter a plea of guilty to this lesser offense of Aggravated Battery? You believe that that's in your best interest?
A. I feel it is. I feel that you will be fair."
* * * * * *
"BY MR. WALLACE:
Yes, your Honor. I feel like and I believe that the Court knows me well enough to know that I certainly would not propose such a plea to Mr. Calloway if I did not feel like it was in his best interest to do so. Your Honor, I feel like Mr. Calloway understands the nature of the original charge. We do have the problem of his remembering the actual portions of the incident, and that's been my difficulty from the outset in dealing with the case, but through the various discovery procedures we have, I have reviewed the evidence that the State would have to present at the trial of this matter and gone over the same with Mr. Calloway. I believe he understands that. I believe he understands the nature of the reduced offense, that we've saved some possible time from a possibility of fifty years to this maximum of ten years on the Aggravated Battery. He's indicated to me that he feels like justice should be done and in view of the evidence which we've gone over together, he is tendering this plea freely and voluntarily and understands the consequences of doing the same."
* * * * * *
"BY THE COURT:
Q. Mr. Calloway, do you have any questions about your rights? Is there anything that I haven't covered that you were wondering about? Of course, I'm sure you would wonder about your sentence, but I'm not in a position to tell you anything about that, so there's no point in asking me. I am going to order a pre-sentence investigation on you if I take this plea of guilty, because I don't know anything about you other than what you've told me here in Court this morning, and I don't know anything more about the offense than what has been recited here by you and your laywer. So, if we accept the plea of guilty I will order this report and when I get the report I will evaluate it and try to determine what I think is a proper sentence considering your interest and the interest of society, which is my job as the Judge. Do you understand?
A. I understand, sir.
Q. Do you have any questions?
A. No sir, I don't."
After accepting defendant's plea of guilty, the trial court ordered a pre-sentence investigation. The defendant was fifty-one years of age when he committed the offense. He was married for twenty-three years and did not have any children. He dropped out of school when he was fifteen and started working. He worked at many jobs. He was a service station attendant; he worked in a laundry and grocery store. He was a theater projectionist, an electrician's helper, and planted trees. He was a janitor at a motel and manager of the De-Ridder Motel at the time of the shooting. He is subject to epileptic seizures which is controlled by medication. The defendant does not have a criminal record worthy of mention except for a minor offense in Vernon Parish in 1959 when he shot a dog and was charged with "Cruelty to Animals". During the colloquy the trial court explained to the defendant why he was being sentenced to the Louisiana Department of Corrections.
"Now, I have carefully thought about all of those guidelines in relation to the facts of your case and your background, and I *1067 have concluded, Mr. Calloway, that a sentence of imprisonment to the Department of Corrections is not only appropriate here, but necessary. I don't feel that given the facts of this case that it is one for a suspended sentence and probation. And I want to tell you briefly why I feel that way.
I think that a lesser sentence than one to the Department of Corrections for what you did will unduly depreciate the seriousness of your act. Now, this crime that you committed, while it is not murder, it is one that very easily could have resulted in a homicide. You took a gun, which you had just bought the day before the shooting, and while you were in a, I'd say, an intoxicated state, which was a voluntary act on your part, which incidentally, was in the morning, which certainly doesn't indicate normal drinking, a person would be at ten-thirty or eleven o'clock in the morning intoxicated, nevertheless, those acts with that gun, your drinking, you shot a person for no justification whatever. There's nothing to indicate that your life was in danger or your bodily safety was in danger. You got miffed at something. You pulled a gun and you shot him. He had no weapon. There's no evidence of him having a weapon."
A sentence is deemed excessive if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Bourgeois, 406 So.2d 550 (La.1981); State v. Bonanno, 384 So.2d 355 (La.1980).
To be weighed against the mitigating factors set forth in article 894.1(B) are the criteria listed in article 894.1(A), which indicate that imprisonment is appropriate. The case at bar is very similar factually to State v. Tompkins, 429 So.2d 1385 (La.1983). In Tompkins, supra, the Supreme Court treats the identical issue which is before us. We find that the record supports the trial judge's conclusion that the defendant is in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the crime. The defendant shot a man with little provocation seriously injuring him. Such a needless shooting warrants serious punishment.
The trial judge felt that a seven year sentence for aggravated battery was appropriate in view of the circumstances of this case. We are unable to say that the trial judge abused his wide discretion in imposing this sentence. State v. Abercrumbia, 412 So.2d 1027 (La.1982). The penalty imposed is not so disproportionate to the crime as to shock our sense of justice. Bonanno, supra. Therefore, we do not find the defendant's sentence to be unconstitutionally excessive. The assignment of error is without merit.

DECREE
For the foregoing reasons, the defendant's sentence is affirmed.
AFFIRMED.